## DAVIS v. STATE.    (8 Div. 843.)

(Supreme Court of Alabama.    March 18, 1926.)

**1. Criminal law ⊙⇒772(6)—Defendant entitled to have his version of facts considered by jury so far as supported by evidence.**

Defendant had right to have his version of facts, so far as supported by tendencies of the evidence, considered by the jury; it being for jury to determine the effect of accusing and excusing facts.

**2. Homicide ⊙⇒276.**

Self-defense became a jury question, where there was some evidence tending to show defense.

**3. Homicide ⊙⇒110.**

Ordinarily, one may not repel the attack of an unarmed man by killing him; such attack not furnishing reasonable grounds for apprehension of great or grievous bodily harm.

**4. Homicide ⊙⇒110—The great bodily harm contemplated by law of self-defense may be inflicted by blows with hands or feet, depending upon circumstances.**

The great or grievous bodily harm contemplated by the law of self-defense may, under certain circumstances, be inflicted by blows with hands or feet, dependent on circumstances, such as great disparity between parties in matter of physical power or other peculiar conditions.

**5. Homicide ⊙⇒276—Whether defendant had reasonable ground to apprehend great bodily harm from unarmed decedent, outweighing defendant by 60 pounds, held for jury.**

In murder prosecution, where record showed that unarmed decedent, who was a powerful man, outweighing defendant by 60 pounds, made a demonstration to go towards defendant, it was a jury question whether defendant had reasonable grounds to apprehend great or grievous bodily harm from deceased.

**6. Homicide ⊙⇒118(1)—Defendant had duty to retreat if he had avenue of escape of which he might avail himself without adding to his peril.**

Defendant had duty to retreat, if alternative of retreat or taking appellant's life was presented, and defendant had avenue of escape of which he might avail himself without adding to his peril, and his failure to do so would deprive him of plea of self-defense.

**7. Homicide ⊙⇒118(1)—Defendant not required to retreat merely because he saw deceased in neighborhood.**

Where defendant, accused of murder, was where he had a right to be at time of killing, and had sought no difficulty with deceased, he was not required to take to his heels because he saw deceased in neighborhood, but he might stand his ground until it became apparent that he must retreat rather than take life of adversary to avoid great bodily harm.

**8. Homicide ⊙⇒45.**

Mere words, no matter how insulting, never reduce a felonious homicide to manslaughter.

**9. Homicide ⊙⇒31.**

"Manslaughter" is unlawful killing of a human without malice, as unpremeditated result of hot blood caused by sudden, sufficient provocation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Manslaughter.]

**10. Homicide ⊙⇒42—Provocation to reduce murder to manslaughter cannot be less than an assault actually committed or menaced under such circumstances as to convince accused that he had cause to believe that he would be presently assaulted.**

Provocation to reduce murder to manslaughter must be either committed or menaced under such circumstances as reasonably convince the mind that accused had cause to believe, and did believe, he would be presently assaulted, and fired fatal shot in consequence of passion, suddenly aroused by a blow given, or apparently about to be given.

**11. Criminal law ⊙⇒763, 764(23)—Court erred in giving jury to understand that there was nothing which might reduce murder to manslaughter, in view of evidence of demonstration by deceased from which justifiable belief of attack might be inferred.**

In murder prosecution, court erred in giving jury to understand that there was nothing in case which might reduce offense charged to manslaughter, where there was evidence tending to show a demonstration by deceased from which jury might have inferred that defendant had cause to believe, and did believe, he was about to be assaulted.

**12. Homicide ⊙⇒181—To support provocation alleged, defendant should have been allowed to show threats by deceased, of respective size of parties, and that deceased was drunk or drinking.**

In murder prosecution, where defendant alleged self-defense and provocation for shooting, defendant should have been allowed, after adducing evidence to show demonstration by deceased towards defendant, to adduce evidence of deceased's threats, of respective size of parties to difficulty, and that deceased was drunk or drinking, to be considered by jury in fixing degree of defendant's guilt in event his plea of self-defense was not allowed to prevail.

**13. Homicide ⊙⇒250—Defendant held entitled to have full proof of facts relied on to reduce degree of offense clearly established in minds of jury.**

Defendant, in murder prosecution, was entitled to have full proof of facts relied on to reduce crime from murder to manslaughter clearly established in minds of jury, regardless

---

⊙⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of whether some of these facts were testified to by some of the witnesses without objection.

**14. Homicide ☞300(14).**

Charge on self-defense *held* erroneous because omitting to state that belief of necessity to kill must be honestly entertained as well as reasonable. '

**15. Criminal law ☞763, 764(9)—Charge on self-defense held erroneous as invading province of jury to say what effect provocation shown had upon defendant, and as tending to lead jury to conclude that provocation of mere words might reduce homicide from murder to manslaughter.** ,

In murder prosecution, instructions on manslaughter *held* erroneous as invading province of jury, whose function it was to say what effect provocation shown had on defendant, and as confusing and tending to lead jury to conclude that provocation of mere words might suffice to reduce murder·to manslaughter.

**16. Homicide ☞146.**

Malice is presumed from the use of a deadly weapon, unless the evidence which proves the killing rebuts the presumption.

**17. Homicide ☞286(2)—Instruction that fact proving killing may rebut presumption of malice from use of deadly weapon held properly refused.**

In a murder prosecution, charge that presumption of malice from use of deadly weapon may be rebutted by the fact proving the killing *held* properly refused.

**18. Homicide ☞300(12).**

Charge on self-defense, pretermitting consideration of facts attending killing other than segregated fact of killing, *held* erroneous, and properly refused.

**19. Homicide ☞9.**

One may commit murder without the specific intent to take the life of his victim.

**20. Homicide ☞269.**

Intention is an inferential fact, and must be determined by the jury, except in cases of inference from use of deadly weapon.

**21. Homicide ☞308(1)—Instruction that defendant could not be convicted of first or second degree murder if he did not intend to kill deceased should have been given.**

In a murder prosecution, instruction that defendant could not be convicted of first or second degree murder if he did not intend to kill deceased *held* proper, and should have been given.

**22. Homicide ☞23(2)—Deliberation and premeditation beyond that necessarily involved in malice are not required to characterize murder in second degree.**

Deliberation and premeditation beyond that necessarily involved in malice are not required to characterize murder in the second degree, and an instruction including these elements as essential is properly refused.

**23. Homicide ☞297, 309(1) — Instructions predicating provocation sufficient to reduce homicide to manslaughter or furnishing cause for acquittal on mere use of words held erroneous, and properly refused.**

Instructions in murder prosecution predicating provocation sufficient to reduce homicide to manslaughter, or to furnish proper cause of acquittal on the mere use of words, and some of which also invaded province of jury, *held* properly refused.

**24. Criminal law ☞1144(4).**

Where record does not show ruling on defendant's pleas in abatement, Supreme Court presumes they were not called to attention of court.

**25. Criminal law ☞302(4).**

Solicitor's nol. pros. of counts of indictment relieved indictment of all questions arising on these counts.

**26. Indictment and information ☞98.**

Court *held* to have properly treated every paragraph of indictment as separate count, though formality of designating and numbering them was not observed.

Appeal from Circuit Court, Morgan County; J. E. Horton, Judge.

A. L. Davis, alias Shorty, alias Alva Davis, was convicted of murder in the second degree, and he appeals. Reversed and remanded.

These requested charges were refused to defendant:

"(10) I charge you, gentlemen of the jury, that it is not necessary that the defendant should have been actually in danger of death or great bodily ˋharm at the time he shot Howell in order for him to be justified in shooting Howell. He had the right to act on the appearance of things at the time, taken in the light of all the evidence, and he had the right to interpret the conduct of Howell in the light of any threat that the evidence proved Howell to have made against the defendant. If the circumstances attending the shooting were such as to justify a reasonable man in the belief that he was in danger of great bodily harm or death, and he honestly believed such to be the case, then he had the right to shoot Howell in his own defense, although as a matter of fact he was not in actual danger, and, if the jury believed that the defendant acted under such conditions and circumstances as set out above, the burden of showing that he was not free from fault in bringing on ˊthe difficulty is on the state, and, if not shown, the jury should acquit the defendant."

"(14) Unless each and every member of the jury are satisfied beyond a reasonable doubt, from all the evidence, that the act of the defendant in killing Howell was malicious, and was also deliberate and premeditated, then you. cannot find the defendant guilty of either murˑ der in the first degree or murder in the second degree."

"(23) I charge you, gentlemen of the jury, that the law does not presume malice from the

use of a deadly weapon, and whether or not in this case malice may be presumed from the use of a deadly weapon is a question for you to determine from all the evidence.

"(24) While malice may be presumed from the use of a deadly weapon, yet this presumption may be rebutted by the fact proving the killing."

"(27) It is not necessary that there should be actual danger of death or great bodily harm in order to justify the taking of human life, but, if the jury are satisfied, from all the evidence in the case, that the circumstances attending the fatal shooting were such as to impress the defendant Davis with a reasonable belief that at the time of the shooting it was necessary in order to prevent death or great bodily harm to his person, then they must acquit the defendant, unless they further believe that the defendant was not free from fault in bringing on the difficulty."

"(29) I charge you, gentlemen of the jury, that, if you are reasonably satisfied from the evidence that the deceased cursed, insulted, and abused the defendant by the use of vile language, and the application of vile epithets to him, which insults and abuses were being administered by the deceased to the defendant at the time of the shooting, and if such insults and abuses and epithets were of such character as would so enrage a reasonably prudent man under like circumstances, and to destroy and dethrone his power of reason, and if such insults and abuses did in fact destroy and dethrone the power of reason of the defendant, so that the defendant did not know or realize what he was doing at the time he fired the shots, then you cannot convict the defendant of murder in the first or second degree.

"(30) I charge you, gentlemen of the jury, that, if you are reasonably satisfied from the evidence that the deceased cursed, insulted, and abused the defendant by the use of vile language and the application of vile epithets to him, which insults and abuses were being administered by the deceased to the defendant at the time of the shooting, and if such insults, abuses, and epithets were of such character as would so enrage a reasonably prudent man, under like circumstances, as to destroy and dethrone his power of reason, and if such insults and abuses did in fact destroy and dethrone the power of reason of the defendant, so that the defendant did not know or realize what he was doing at the time that he fired the shots, then you should acquit the defendant."

"(42) If the defendant did not intend to kill Howell, then you cannot convict him of murder in the first or second degree.

"(43) If the defendant did not provoke the difficulty, and did and said nothing to bring it on, and could not retreat without increasing his peril, and under such circumstances killed Howell on a sudden provocation, without deliberation and premeditation to kill him, although the provocation consisted only in abusive language, then you cannot convict the defendant of murder in the first degree; and, if the defendant so killed Howell, and at the time and in connection with the insults and abuses Howell threatened to assault and injure the defendant, though such threat and injury were not calculated to produce great bodily harm,

then you cannot convict the defendant of murder in the second degree; if such threatened assault or injury was calculated to produce great bodily harm, and was made under such circumstances as to produce in the mind of a reasonably prudent man, and defendant did honestly believe that he was in immediate danger of great bodily harm, then he would not be guilty of any offense, and you should acquit him."

"(45) If the defendant was free from fault in bringing on the difficulty, and could not retreat without increasing his peril, and under such circumstances killed Howell on a sudden provocation without premeditation or deliberation, although provocation consisted only in abusive and insulting language to the defendant, then the defendant would not be guilty of murder in the first degree, and at most would be guilty of murder in the second degree. If the defendant killed Howell, and at the time, and in connection with the insults and abuses, Howell threatened to assault or injure the defendant, and the circumstances were such as would cause a reasonably prudent man to believe, and the defendant did honestly believe, that he was about to be assaulted or injured. though such threatened assault or injury was not calculated to produce great bodily harm, then the defendant, at most, would be guilty of manslaughter in the first degree; but, if the threatened assault or injury to the defendant was calculated to produce great bodily harm, and if the defendant honestly believed, and the conditions and circumstances were such as to cause a reasonably prudent man to believe, that he (the defendant) was in immediate danger of great bodily harm, then the killing would be in self-defense, and should find the defendant not guilty."

Sample & Kilpatrick, of Hartselle, for appellant.

Evidence of the height, weight, and strength of deceased should have been admitted. Smith v. State, 96 So. 779, 209 Ala. 666; Robinson v. State, 45 So. 916, 155 Ala. 72. It was error to charge the jury that the only thing that would reduce murder to manslaughter was an assault by deceased. Reeves v. State, 65 So. 160, 186 Ala. 14; Ragland v. State, 27 So. 983, 125 Ala. 12; Mitchell v. State, 60 Ala. 26. Charge 10 was a correct statement of the law and should have been given. Bell v. State (Ala. App.) 104 So. 443; McCutcheon v. State, 59 So. 714, 5 Ala. App. 96; Bluett v. State, 44 So. 84, 151 Ala. 41. These charges should have been given: Charge 27—Keith v. State, 11 So. 914, 97 Ala. 32; Cleveland v. State, 5 So. 426, 86 Ala. 9. Charges 23, 24—Smith v. State, 92 So. 93, 18 Ala. App. 318. Charges 42, 14—Isham v. State, 38 Ala. 213; Miller v. State, 19 So. 37, 107 Ala. 51; Gibson v. State, 8 So. 98, 89 Ala. 121, 18 Am. St. Rep. 96; Ward v. State, 11 So. 217, 96 Ala. 100. Charges 29, 30—Smith v. State, 3 So. 551, 83 Ala. 26.

Harwell G. Davis, Atty. Gen., for the State.

Brief of counsel did not reach the Reporter.

SAYRE, J. Defendant was convicted of murder in the second degree, and sentenced to 40 years in the penitentiary. Numerous exceptions were reserved. We shall state only the reasons for a reversal and such conclusions as may be deemed necessary to another trial.

[1] Defendant killed one Howell under circumstances which may be briefly stated as follows: Defendant had testified as a witness for the prosecution in a case at Hartselle in which deceased was charged with driving an automobile at a speed in violation of law. Deceased, it must be inferred from the evidence, felt greatly aggrieved, and had threatened to give defendant a beating. A few days afterwards, in the afternoon, deceased drove an automobile into Decatur. With him were two of the witnesses who testified for the state at the trial here under review. Without intending to pronounce judgment on the facts, we state what followed according to defendant's contention, because defendant had a right to have his version of the facts, so far as supported by tendencies of the evidence, taken into consideration by the jury. It was for the jury to determine the effect of the accusing and the excusing facts, and we do not intend to suggest what their determination should have been. With this in mind, we proceed: Driving down along Second street, about 8:30 o'clock in the evening, deceased passed the point where defendant was standing on the sidewalk. After a few minutes, deceased drove his car back along Second street, up to the pavement immediately in front of the place where defendant stood, and there came to a stop. Deceased was a powerful young man, weighing 175 to 180 pounds. Defendant, a barber, weighed 120. From what has been stated, and from other tendencies of the evidence to be stated, the jury may very well have inferred that the purpose of deceased was to bring on a difficulty with defendant. No other occasion for his stopping at that point appears in the evidence. The state's evidence was that deceased then opened the proceedings by inviting defendant to get in the car, saying that he would carry him (defendant) out to the edge of town and give him a good whipping. Defendant declined the invitation; testimony in his behalf being that he said to deceased, in effect, that if he (deceased) would come back when sober, he (defendant) would settle with him. Thereupon, defendant moving away from the car, deceased applying a foul epithet to defendant, and telling him that he had not the guts to do anything, deceased leaned over his companion, who sat on the automobile seat between deceased and defendant—but who at this point "rolled" hurriedly out of the car—took hold of the door with his left hand as if to get out, and at the same time, according to defendant, reached with his right hand down towards the seat, whereupon defendant drew his pistol, turned, and, from a distance of 10, 12, or 15 feet, as variously stated, fired five shots in rapid succession into the body of deceased, who died upon the spot. One shot entered near the left nipple, going directly in, and this may have been accepted as tending to show that deceased had turned towards defendant. Two others struck deceased in front; still two others entered his body from the rear.

The trial appears to have been affected by two theories, which, in the circumstances, we consider to have been erroneous and prejudicial to defendant's case: (1) That there was no evidence tending to show a case of self-defense; (2) that opprobrious epithets, unless attended by actual assault, could never reduce an unlawful homicide from murder to manslaughter.

[2-7] We are far from saying that defendant should have been acquitted on the ground of self-defense. Still, we think, there was some evidence tending to show self-defense, which thereupon, according to the long-standing precedents in this court, became a question for the jury. Deceased brought on the difficulty, and every indication points to the conclusion that he intended to bring it on. Ordinarily, one may not repel the attack of an unarmed man by killing him, for ordinarily, such an attack does not furnish reasonable ground for the apprehension of great or grievous bodily harm, but it does not follow that in every such case the great bodily harm which the law of self-defense contemplates can never be inflicted by blows with hands or feet. That may depend upon circumstances, such as great disparity between the parties in the matter of physical power or other peculiar conditions, and we are of opinion that in the case shown by the record the question whether defendant had reasonable ground to apprehend such harm was one for jury decision. The weakest point in the defense is found by the argument that defendant failed to retreat when the precepts of the law required him to do so. If the alternative of retreat or taking the life of his assailant was presented, and defendant had an avenue of escape of which he might have availed himself without adding to his peril, it was his duty to retreat, and his failure to do so would have deprived him of this plea of self-defense. Still, defendant was where he had a right to be; he had sought no difficulty with deceased; and no rule of law required him to take to his heels merely because he saw deceased in his neighborhood. He might stand his ground until it became reasonably apparent that, to avoid great bodily harm, he must retreat rather than take the life of his adversary. Whatever the court may now think of its effect, there was some tendency of the evidence in support of the plea of self-defense of which the jury were the appointed judges. Roberts v. State, 68 Ala. 156; Turner v. State, 49 So. 828, 160 Ala. 44.

[8-13] It is true that mere words, no matter how insulting, never reduce a felonious homicide to manslaughter. Manslaughter is the unlawful killing of a human being without malice; that is, as the unpremeditated result of hot blood, caused by sudden, sufficient provocation. And such provocation can, in no case, be less than an assault, either actually committed or menaced under such circumstances as reasonably convince the mind that the accused had cause to believe, and did believe, that he would be presently assaulted, and that he struck, or fired the fatal shot, not from a formed design to kill, but in consequence of passion suddenly aroused by a blow given or apparently about to be given. This is substantially the language of Stone, J., in Mitchell v. State, 60 Ala. 32. It has been frequently followed. Reeves v. State, 65 So. 160, 186 Ala. 14. There was no evidence that deceased actually assaulted defendant; but there was evidence tending to show a demonstration on the part of deceased from which the jury might have inferred that the defendant had good cause to believe, and did believe, he was about to be assaulted—that an assault was threatened. It follows that the court erred when it gave the jury to understand, as it did, that there was nothing in the case which might have the effect of reducing the offense charged to manslaughter. As giving color and character to the provocation alleged, defendant should have been allowed, after evidence tending to show the demonstration to which we have referred, to adduce evidence of the threats made by deceased and communicated to defendant, of the respective sizes of the parties to the difficulty, and that deceased was drunk or drinking, to be considered by the jury in fixing the degree of defendant's guilt, in the event his plea of self-defense was not allowed to prevail. Neilson v. State, 40 So. 221, 146 Ala. 683; Barden v. State, 40 So. 948, 145 Ala. 1. Some of these facts were testified to by some of the witnesses without objection; but defendant was entitled to have full proof of them—to have them clearly established in the minds of the jury—when he offered the same proof by other witnesses.

Charge 10, refused to defendant, has been approved by this court as a proper charge in circumstances such as obtain in this case. Bluett v. State, 44 So. 84, 151 Ala. 56; Id., 49 So. 854, 161 Ala. 17; Richardson v. State, 68 So. 57, 191 Ala. 28; Glass v. State, 78 So. 819, 201 Ala. 442, and frequently by the Court of Appeals. In Robinson v. State, 106 So. 134, 213 Ala. 691, this court approved the refusal of a charge much like this, charge 4 in that case; but that charge omitted to predicate consideration of "all the evidence."

[14] Charge 27 was properly refused. It was defective, as this court has often held, because it omitted to state that the belief of necessity to kill must be honestly entertained as well as reasonable. Griffin v. State, 50 So. 962, 165 Ala. 45.

[15] Charges 43 and 45 were bad. They invaded the province of the jury, whose function it was, within the limits heretofore stated, to say what effect the provocation shown had upon the defendant. They were also confused in their statement of the law, and tended to lead the jury to conclude that the provocation of mere words might suffice to reduce an unlawful homicide from murder to manslaughter.

[16-18] Charges 23 and 24 were refused without error. Malice is presumed from the use of a deadly weapon, unless the evidence which proves the killing rebuts the presumption. Hornsby v. State, 10 So. 522, 94 Ala. 66, and cases cited to section 4454 of the Code 1923, vol. 2, p. 430. Charge 24 pretermitted also consideration of facts attendant upon the killing other than the segregated fact of killing.

[19-22] We think charge 42 should have been given. Of course, one may commit murder without the specific intent to take the life of his victim. But this is not a case calling for the application of that principle of law. It may be hard to conceive that defendant intended to do anything but what he did; still, intention is an inferential fact, and, except in the circumstances stated when we were considering charges 23 and 24 in this case, must be determined by the jury. Miller v. State, 19 So. 37, 107 Ala. 51. Charge 14 involved an unsound definition of murder in the second degree. Deliberation and premeditation, beyond that necessarily involved in malice, are not required to characterize murder in the second degree. McQueen v. State, 15 So. 824, 103 Ala. 16.

[23] Charges 29 and 30 were properly refused. They predicate provocation sufficient to reduce homicide to manslaughter, or to furnish proper cause of acquittal, on the mere use of words. So with reference to charges 38 and 39, which have the additional fault that they are invasive of the province of the jury.

[24] The record does not show any ruling on defendant's several pleas in abatement. Without intimating that there was merit in any of them, we must presume they were not called to the attention of the court.

[25, 26] The solicitor's nol. pros. of counts 1, 2, and 4 of the indictment relieved the indictment of all questions arising out of those counts. We think the trial court properly treated each paragraph of the indictment as a separate count, though the formality of so designating and numbering them was not observed.

For the errors designated, the judgment must be reversed and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.