ROBERT M. HILL, Sr., Retired Circuit Judge.
Following grand jury indictment and jury verdict, the appellant was adjudged guilty of the offense of buying, receiving or concealing stolen property. Ala.Code § 13A-8-16 (1975). He was sentenced to four years’ imprisonment.
On the night of November 18, 1979, a Mrs. Ballance parked her car in front of her apartment in Marietta, Georgia. The next morning it was gone. She never saw it again. It was a silver colored 1978 Trans Am Pontiac with T-top and red interior and a C.B. radio antenna mounted on the trunk. Mrs. Ballance was given a copy of the purchase contract by the seller company at the time of purchase of her car. The contract recited the car’s identification number as 2W87Z8N107125.
At about 7 p.m. on December 10, 1979, Danny Smith, an investigator with the District Attorney’s office, who had had more than eight years prior experience as an auto mechanic, and Deputy Sheriff Tom Miller went to the residence of a Mr. Stimpson and with Stimpson’s permission they looked in two barns belonging to Stimpson located behind his residence. Inside one of the barns Smith found the rear half of a silver colored T-top Pontiac Trans Am, red interi- or, which had a base mount for a C.B. radio antenna located on the trunk lid. The car had been cut in two. The portion found by Smith, which he denominated a “rear clip,” consisted of the “top portion of the vehicle from the top back.” The firewall, the complete front-end and the interior had been removed from the vehicle. About ten feet in front of the “rear clip, ” they found a 400 cubic inch V-8 engine steel-bolted together to an automatic transmission lying in the back of a military jeep. The cross-member support adapted to hold the transmission in place had been cut with a cutting torch. Smith also found there two doors to a Mack truck, parts to and ownership papers to an Oldsmobile Cutlass, and body and mechanical parts to other motor vehicles.
Investigator Smith copied the serial number Z8N107125 from the transmission. He was unable to get a number from the engine that night and later that night the engine and the transmission were removed from the Stimpson barn by appellant.
The transmission numbers and letters copied by Smith did not constitute the complete identification number; that is, they were only a derivative number, a partial sequence included in the entire vehicle iden *647 tification numbers located elsewhere on the car.
Sergeant A.H. Clifton of the Alabama Bureau of Investigation, Vehicle Theft Unit, an officer of twenty-five years’ experience, testified that the vehicle identification numbering contained on the purchase. contract supplied to Mrs. Ballance, that is, 2W87Z8N107125, indicated: the “2,” a General Motors Pontiac; the “W,” the car line series, a Firebird; the “87,” the body style, a Trans Am; the “Z,” a 400 cubic inch engine or motor; the “8,” the year model, a 1978; the “N” designated the Norwood, Ohio, assembly plant, and the digits “107125” constituted the sequential production numbers given the car on the Norwood plant’s assembly line.
It was Clifton’s testimony that no other vehicle assembled at the Norwood plant would be given the sequential production number 107125.
About two weeks before Investigator Smith examined the auto parts in the Stimpson barn, appellant, a friend of Stimpson for thirty years, told Stimpson that he needed a dry place to work on a car. Stimpson gave him permission to use the barns. On the night Officer Smith examined the auto parts in the barn, he secured a wrecker service which hauled in for im-poundment the “rear clip” of the Pontiac Trans Am and some parts to other automobiles found there. But, because the wrecker was not equipped to haul the motor and transmission, they were left at the barn on the assurance from Mr. Stimpson that he would see to it that they would remain there until the following morning. Later that night the appellant came to Stimpson’s house, showed him a certificate of title and license plate, and told him he was going to get the motor and transmission because they were his property. The next morning those two items were no longer in the barn. During the night the Trans Am “rear clip” was taken in for impoundment, someone doused it with gasoline and burned it.
Appellant’s defense was that he and one Jimmy Jordan bought the “rear clip,” motor and transmission from one Curtis Kelly’s junkyard. He produced an Alabama Certificate of Title. That certificate covered a 1978 silver Pontiac Firebird, which had been financed through Allstate Insurance Company to one Jimmy Jordan. It had identification number 2W87Z8N105385. That car had been wrecked and was in the Kelly junkyard. Thus, it is seen that the last four digits of the sequential production number were not the same as those identifying the Ballance car.
The National Crime Information Center certified that the Ballance car was a stolen one.
Appellant contends the trial court was in error in admitting into evidence the duplicate of the purchase contract supplied to Mrs. Ballance by the seller company at the time she bought her car. This contention is without merit. It is clear that the contract was not a business record within the purview of § 12-21-43, Code of Alabama 1975. If the conduct of the parties to a bilaterial writing shows that the parties intended that each of the two or more duplicates should be the equal of each other, then each of such duplicates is an original. C. Gamble, McElroy’s Alabama Evidence (3d ed. 1977); Robinson v. State, 38 Ala. App. 315, 82 So.2d 815 (1955), and cases cited. Further, even if the document introduced had not been a duplicate original, it was admissible as secondary evidence since the original was in possession of the seller company in Georgia, a fact admitted by appellant. Absence of the original of the purchase agreement from the jurisdiction of the court is ground for the admission of secondary evidence. C. Gamble, McElroy’s Alabama Evidence § 217.01(1) (3d ed. 1977); Waters v. Mines, 260 Ala. 652, 72 So.2d 69 (1954).
The appellant next contends the State failed to prove all the necessary elements of the crime charged. Ala.Code § 13A-8-16 (1975), provides:
“A person commits the crime of receiving stolen property if he intentionally receives, retains or disposes of stolen property knowing that it has been stolen or *648 having reasonable grounds to believe it has been stolen, unless the property is received, retained or disposed of with intent to restore it to the owner.”
There was ample evidence from the State in proof of all elements of the offense for submission of the cause to the jury, and appellant’s motion for a directed verdict and judgment of acquittal was properly denied.
The judgment rendered on the jury’s verdict is affirmed.
The foregoing opinion was prepared by the Honorable ROBERT M. HILL, Sr., Retired Circuit Judge, temporarily on duty on the court pursuant to § 12-2-30(b)(6), Code of Alabama 1975; his opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.